Darin M. Sands, OSB No. 106624
**Bradley Bernstein Sands LLP**
1211 NW Glisan St., Ste 204
Portland, OR 97209
Telephone: +1 503-734-2480
dsands@bradleybernstein.com

Daniel F. Jacobson (D.C. Bar No. 1016621)+
**Jacobson Lawyers Group PLLC**
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
Telephone: +1 301-823-1148
Dan@jacobsonlawyersgroup.com

+ admitted pro hac vice

*Attorneys for Plaintiffs*

(Additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| REACH COMMUNITY DEVELOPMENT, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Case No. 3:25-cv-2257 <br><br> **PLAINTIFFS' BRIEF ON THE EFFECT OF PROCEEDINGS IN** ***DICKINSON v. TRUMP*** |

Pursuant to the Court's February 25 Order, Plaintiffs respectfully submit this brief addressing the effect of the pending preliminary injunction proceedings in *Dickinson v. Trump*, No. 3:25-cv-2170, on Plaintiffs' motion for a preliminary injunction in this case.

## INTRODUCTION

For critical legal and practical reasons, Judge Simon's disposition of the pending preliminary injunction proceedings in *Dickinson* does not and should not affect in any way this Court's resolution of the preliminary injunction that Plaintiffs have requested in this case. No matter what Judge Simon orders in *Dickinson*, this Court can—and should—enjoin Defendants from using chemical munitions that are likely to infiltrate Plaintiffs' homes, bodies, and property. Only an injunction in this case—tailored to and enforceable by Plaintiffs, and which Plaintiffs could defend on appeal—would provide Plaintiffs adequate protection from suffering further irreparable harm.

The Ninth Circuit held just last year that the existence of an injunction in one case does not prevent a district court from entering an overlapping or duplicative injunction to protect the rights of plaintiffs in a different case. *See Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025). Overlapping injunctions are routinely entered by courts across the country, especially where separate parties challenge the same unlawful government conduct, which reflects the fundamental principle that everyone has the right to his or her own day in court.

A separate preliminary injunction is especially warranted here: Plaintiffs state unique legal claims, have suffered distinct physical, psychological, and constitutional harms, and seek relief that is tailored to their specific circumstances. A preliminary injunction would give Plaintiffs durable, enforceable, and complete relief while their case is litigated to final judgment, whereas any injunction entered in *Dickinson* that incidentally benefits Plaintiffs could be

modified, dissolved, stayed, or overturned without warning or input from Plaintiffs. In that regard, the government's inevitable appeal (and possible emergency stay request) from an injunction in *Dickinson* could substantially affect Plaintiffs' rights, without Plaintiffs' participation. Even if an injunction in *Dickinson* were to remain in place during the pendency of this case, Plaintiffs may not be able to enforce that injunction if Defendants violate it in a manner that harms Plaintiffs. And, in all events, an injunction tailored to the *Dickinson* plaintiffs' First Amendment claims is unlikely to fully protect Plaintiffs from the violations of their substantive due process rights here.

Plaintiffs should not be forced to suffer even one more night of tear gas infiltrating their homes, bodies, and property. Whatever Judge Simon decides in *Dickinson*, this Court has an independent obligation to resolve Plaintiffs' motion for a preliminary injunction on the legal claims and factual record presented in this case. The Court should grant Plaintiffs' motion and enter preliminary relief.

## RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit on December 5, 2025 (Dkt. 1), and moved for a preliminary injunction on December 29 (Dkt. 20). At the Court's direction, Plaintiffs filed an amended complaint (Dkt. 45) and superseding motion for a preliminary injunction (Dkt. 46) on January 30, 2026, and the Court held a hearing on Plaintiffs' motion on February 13 (Dkt. 60, 61). The Court is familiar with the legal claims and factual record developed in this case, which are set forth in Plaintiffs' superseding motion and reply brief (Dkt. 55) and in testimony at the February 13 hearing and preceding depositions. Relevant here, Plaintiffs are pursuing preliminary relief solely under the Due Process Clause of the Fifth Amendment.

*Dickinson v. Trump*, No. 3:25-cv-2170, has proceeded in parallel to this case. The plaintiffs in *Dickinson* are individuals who regularly protest outside of the Portland ICE facility, as well as journalists who report on the protests. They filed their lawsuit on November 21, 2025 (*Dickinson* Dkt. 1), but did not move for preliminary relief until January 27, 2026 (*Dickinson* Dkt. 11), roughly a month after Plaintiffs here initially moved for a preliminary injunction. On February 3, Judge Simon entered a temporary restraining order (TRO), holding that the plaintiffs in *Dickinson* were likely to succeed on their First Amendment retaliation claim and that the other preliminary injunction factors favored temporary relief. *Dickinson* Dkt. 68. The TRO, in relevant part, enjoined the government and its agents "at or in the vicinity of" the Portland ICE facility from "target[ing] any individual with a less lethal munition, if doing so would endanger any other individual who does not pose an imminent threat of physical harm to a law enforcement officer or other person." *Id.* at 20–21.

On February 17, the Court extended the TRO, but ordered that "[t]his extended TRO shall expire in 14 days," *i.e.*, on March 3, "unless otherwise extended by stipulation of the parties." *Dickinson* Dkt. 105. The parties have not entered into a stipulation extending the TRO beyond March 3.

In the meantime, the *Dickinson* plaintiffs filed a motion for a preliminary injunction, seeking relief only on their First Amendment retaliation claim. *See Dickinson* Dkt. 94. The government has opposed that motion. *Dickinson* Dkt. 116. From March 2 to March 4, Judge Simon held a preliminary injunction hearing but has not yet ruled on the motion.

**ARGUMENT**

Plaintiffs respectfully request that this Court promptly rule on their pending motion for a preliminary injunction, without waiting for a ruling in *Dickinson*, as Plaintiffs' motion is ripe for

decision and there is currently no injunction in place at all protecting Plaintiffs. But if Judge Simon does issue a new injunction before this Court rules on Plaintiffs' pending motion, this Court should nevertheless enter a separate preliminary injunction without delay. Even if an injunction in this case would entirely overlap with any injunction entered in *Dickinson* (and it likely would not), it is imperative as both a legal and practical matter that Plaintiffs obtain an injunction protecting their rights, that they could enforce in the event of violations, and that they could defend if and when the government seeks appellate relief.

**1.** The Ninth Circuit has expressly held that entry of preliminary injunctive relief in a parallel lawsuit does not legally preclude another court from entering overlapping or even identical relief. In *American Encore v. Fontes*, the Ninth Circuit rejected the government's argument "that '[t]he public interest is not served by having a duplicative federal injunction on the same subject.'" 152 F.4th at 1121. The court noted that the government had identified "no authority that holds that issuing a duplicative injunction is a bar to preliminary injunctive relief." *Id.*. The court thus affirmed a preliminary injunction that overlapped with one previously entered by a different court, finding that all four preliminary injunction factors were met notwithstanding the earlier injunction.

Indeed, "[o]verlapping injunctions appear to be a common outcome of parallel litigation." *Id.* (quoting *California v. HHS*, 390 F. Supp. 3d 1061, 1065–66 (N.D. Cal. 2019)). For example, district courts across the country entered overlapping injunctions related to the 2020 census, injunctions which were ultimately upheld by the Supreme Court. *See, e.g.*, *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 677–78 (S.D.N.Y. 2019); *California v. Ross*, 358 F. Supp. 3d 965, 1050–51 (N.D. Cal. 2019); *Kravitz v. U.S. Dep't of Commerce*, 366 F. Supp. 3d 681, 755–56 (D. Md. 2019). Similar parallel injunctions were entered related to the government's

rescission of DACA, which, again, the Supreme Court upheld. *E.g.*, *Nat'l Ass'n for the Advancement of Colored People v. Trump*, 315 F. Supp. 3d 457, 461–62 (D.D.C. 2018); *California*, 390 F. Supp. 3d at 1065–66; *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 435 (E.D.N.Y. 2018) (finding "no authority for the proposition that Plaintiffs cannot establish irreparable harm simply because another court has already enjoined the same challenged action"). Other examples abound. *E.g.*, *Mayor & City Council of Baltimore v. Azar*, 392 F. Supp. 3d 602, 618–19 (D. Md. 2019) ("The earlier granting of a nationwide injunction does not prevent this Court from entering an overlapping injunction if all of the preliminary injunction factors are met in this case."); *Nw. Immigrant Rts. Project v. USCIS*, 496 F. Supp. 3d 31, 81 (D.D.C. 2020) (holding that "parallel injunction entered in the present dispute does not remove the risk that Plaintiffs will suffer irreparable injury").

The frequency with which district courts enter overlapping injunctions reflects two bedrock principles of our adversarial system: (1) courts have a "duty to determine whether litigants are entitled to relief," *Am. Encore*, 152 F.4th at 1121 (quotation marks omitted); and (2) "everyone should have his own day in court," *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) (quotation marks omitted). The Supreme Court has applied these principles for nearly a century specifically in the context of parallel lawsuits, holding that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (Cardozo, J.).

**2.** There are several compelling legal and practical reasons why this Court should swiftly enter a preliminary injunction that provides Plaintiffs with durable, enforceable, and complete relief in this case—even if Judge Simon enters a similar injunction in *Dickinson*.

The plaintiffs in these two cases present unique legal claims, have suffered distinct harms, and seek relief that is tailored to their specific circumstances. Whereas the *Dickinson* plaintiffs raise First Amendment claims related to the government's intentional retaliation against them for their political views, Plaintiffs here raise Fifth Amendment claims concerning Defendants' shocking deliberate indifference to the injuries they are causing. The *Dickinson* plaintiffs, like Plaintiffs here, have been injured by the government's use of chemical munitions, but they do not present evidence of the same types of acute and long-term injuries from repeated indoor exposure to chemical toxins that Plaintiffs present here. And, whereas the *Dickinson* plaintiffs seek an injunction that protects their interests in protesting and engaging in journalism near the ICE facility, Plaintiffs here seek an injunction that is specifically tailored to protect them from chemical munitions that are likely to infiltrate their homes, bodies, and property.

These significant legal and factual differences mean that a preliminary injunction in *Dickinson* will not necessarily afford Plaintiffs here with (1) durable, (2) enforceable, and (3) complete relief while their claims are litigated to final judgment.

*First*, an injunction entered in *Dickinson* would be insufficiently durable to protect Plaintiffs' interests because it could be modified, dissolved, stayed, or overturned without warning. As other courts have observed, overlapping injunctions are warranted where the government has not "committed to stand down in the parallel litigation, leaving the prospect that the injunction in that case could be stayed or set aside" by a reviewing court. *Nw. Immigrant Rts. Project*, 496 F. Supp. 3d at 81. Here, the government has not "committed to stand down in the parallel litigation" in any sense. *Id.* Quite the opposite: the government continues to oppose the preliminary injunctions requested in both cases, insists that its use of chemical munitions is lawful and necessary, and has done nothing to moderate its conduct to prevent or mitigate harms

to the plaintiffs in either case. Beyond that, the government has asked the court in each case to stay any injunction pending appeal, meaning there is every reason to believe the government will seek an immediate stay pending appeal from the Ninth Circuit. *See* Defs.' Opp. at 38; *Dickinson* Dkt. 116 at 44 (requesting a stay pending appeal, or "at a minimum," a seven-day administrative stay "to allow Defendants to consider seeking relief from the Court of Appeals"). That only heightens the prospect that any injunction in *Dickinson* "could be modified, stayed, or vacated at any time." *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 114 (D.D.C. 2020).

In the event of a stay in *Dickinson*, "'[e]ven a temporary lag between the lifting' of the [*Dickinson*] injunction 'and the entry of an injunction by this Court'" would present a serious risk of irreparable harm to Plaintiffs. *Id.* (quoting *Whitman-Walker Clinic v. HHS*, 485 F.Supp.3d 1, 59–60 (D.D.C. 2020)); *accord Chatwani v. Noem*, No. 25-CV-04024, 2026 WL 458418, at *7 (N.D. Ill. Feb. 18, 2026). In light of the frequency with which Defendants were using tear gas and other chemical munitions prior to the *Dickinson* TRO, there is a substantial possibility that they will resume that use immediately. Plaintiffs should not be made to bear a single additional night of being gassed in their homes, particularly when a preliminary injunction that would protect them is ripe for a decision. "Plaintiffs … need not wait for Damocles's sword … to actually fall on them before the court will issue an injunction." *TikTok*, 507 F. Supp. 3d at 114 (quotations omitted).

*Second*, in general, an "injunction's protection extends only to the suing plaintiff," so "only the plaintiff can enforce" it. *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). If a non-party wants to enjoin similar conduct, "she must file her own suit." *Id.* Plaintiffs should not be forced to gamble their safety and bodily integrity on the continued vitality or precise scope of an injunction in a case to which they are not parties and that they may have no ability to enforce.

Indeed, the government may argue that even the *Dickinson* plaintiffs would not be able to enforce their injunction against conduct that harms Gray's Landing residents but not protesters, such as if officials shoot tear gas projectiles that land next to Gray's Landing but not any protesters.

Relatedly, Plaintiffs may not be able to protect their interests if the government appeals any injunction entered in *Dickinson*. Although the legal claims in the case differ, it is possible that the Ninth Circuit's resolution of certain factual and legal issues would prejudice Plaintiffs in this case. Plaintiffs should not be "compelled to stand aside while a litigant in another [case] settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

*Third*, complete relief for Plaintiffs here is an injunction that prevents the use of chemical munitions that are likely to infiltrate Gray's Landing (with an exception for imminent threats to the lives of law enforcement officers or other persons). The TRO in *Dickinson* enjoined the government from "target[ing] any individual with a less lethal munition, if doing so would endanger any other individual who does not pose an imminent threat of physical harm to a law enforcement officer or other person." *Dickinson* Dkt. 68 at 21. Assuming that Judge Simon enters the same relief as a preliminary injunction, that provision could be interpreted to protect Plaintiffs, who are "endanger[ed]," *id.*, by Defendants' use of chemical munitions that are likely to infiltrate Gray's Landing. But it would not necessarily cover instances, documented in this case, where Defendants have fired chemical munitions without "target[ing]" any individual, *id.*, such as when Defendants fired chemical munitions directly at Gray's Landing or into the Gray's Landing courtyard, or when Defendants released tear gas on the streets surrounding Gray's Landing. *See, e.g.*, PI Mot. at 16–19; PI Reply at 5–9, 11 (citing evidence). Beyond that, Judge Simon may enter a preliminary injunction that is narrower than the TRO. And even if Judge

Simon does enter the same relief, the government may not interpret it in a way that protects Plaintiffs, who, as noted, may be unable to enforce the injunction.

**3.** Finally, in the event Judge Simon denies the motion for a preliminary injunction in *Dickinson*, that result would not prevent this Court from granting Plaintiffs' requested relief on this record. Denial of a preliminary injunction in *Dickinson* would not finally adjudicate the parties' rights in that case (or any other), nor would it bind other courts addressing *different* plaintiffs and *different* claims. *See Taylor*, 553 U.S. at 892–93; *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Whatever the outcome of *Dickinson*, this Court should decide Plaintiffs' motion based on the claims and record presented here. *Am. Encore*, 152 F.4th at 1121.

Plaintiffs seek relief tailored to a distinct constitutional injury—recurrent chemical intrusion into a residential building and residents' bodies—and have developed an extensive record of Defendants' deliberate indifference to the severe physical and psychological harms their conduct is causing. That record amply supports entry of a preliminary injunction targeted at stopping Defendants' release of chemical munitions likely to infiltrate Plaintiffs' homes, bodies, and property.

\*    \*    \*

The Court can and should determine whether Plaintiffs are entitled to preliminary relief and enforceable judicial protection from the federal government's shocking conduct that has injured Plaintiffs for months. To the extent that equitable considerations also factor into the Court's analysis, Plaintiffs respectfully submit that they should not be made to rely on relief entered in a different case, to protect different individuals who state different claims based on different harms than Plaintiffs here. The Resident Plaintiffs in particular have shown tremendous bravery stepping forward in this litigation, with some even testifying in public about deeply

personal and traumatic events and submitting to cross-examination, and they respectfully ask to have their motion decided on its own force.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' motion and reply, the Court should grant Plaintiffs' motion for a preliminary injunction.


March 5, 2026                                    Respectfully submitted,

*/s/Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar No. 1016621)+
Lynn D. Eisenberg (D.C. Bar No. 1017511)+
Stephen K. Wirth (D.C. Bar 1034038)+
Brian C. Rosen-Shaud (D.C. Bar No. 90042065)+
**Jacobson Lawyers Group PLLC**
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
Telephone: +1 301-823-1148
Dan@jacobsonlawyersgroup.com

Darin M. Sands, OSB No. 106624
Colin Hunter, OSB No. 131161
**Bradley Bernstein Sands LLP**
1211 NW Glisan St., Ste 204
Portland, OR 97209
Telephone: +1 503-734-2480
dsands@bradleybernstein.com
chunter@bradleybernstein.com

Taylor Jaszewski (CA Bar No. 345094)+
**Bradley Bernstein Sands LLP**
1212 Broadway, Suite 1100
Oakland, CA 94612
Telephone: +1 510-380-5801
tjaszewski@bradleybernstein.com

        Brian D. Netter (D.C. Bar No. 979362)+
        Jeffrey B. Dubner (D.C. Bar No. 1013399)+
        Anna L. Deffebach (D.C. Bar No. 241346)+
        **Democracy Forward Foundation**
        P.O. Box 34553
        Washington, D.C. 20043
        (202) 448-9090
        bnetter@democracyforward.org
        adeffebach@democracyforward.org

        Katie Schwartzmann (La Bar No. 30295)+
        **Protect Democracy**
        201 St. Charles Ave., Suite 114
        New Orleans, La 70170
        (202) 573-4382

        + Admitted pro hac vice

        *Counsel for Plaintiffs*