BRETT A. SHUMATE
Assistant Attorney General
ANDREW I. WARDEN
Assistant Director, Federal Programs Branch
SAMUEL S. HOLT
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 674-9761
Samuel.Holt2@usdoj.gov
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| REACH COMMUNITY DEVELOPMENT, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Case No. 3:25-cv-2257 |

**DEFENDANTS' SUPPLEMENTAL BRIEFING ON EFFECT OF *DICKINSON* PROCEEDINGS**

**INTRODUCTION**

This Court requested supplemental briefing on the effect of the preliminary injunction proceedings in *Dickinson* on this case. In short, the only potential effect is a narrow one: to the extent any preliminary injunctive relief granted in *Dickinson* duplicates the preliminary relief sought here, such relief should not issue in this case because Plaintiffs cannot establish irreparable harm from being denied a duplicative injunction that would do nothing to redress their alleged injuries. Alternately, this Court should hold Plaintiffs' preliminary injunction motion in abeyance pending resolution of the *Dickinson* preliminary injunction motion; if an injunction similar to the *Dickinson* temporary restraining order issues there, this Court should then continue to hold Plaintiffs' motion in abeyance or stay the case until subsequent developments warrant further proceedings.

Beyond that, nothing in *Dickinson* binds this Court, because nonmutual collateral estoppel does not apply against the federal government. And any persuasive value of a decision by Judge Simon in *Dickinson* must be assessed through the lens of the party presentation rule. If Plaintiffs here did not advance a particular argument—or the record here does not support it—the Court should not import it from *Dickinson* or rely on it sua sponte.

**BACKGROUND**

This case relates to unlawful protests at the Portland ICE Facility and alleged downstream impacts of those protests on a nearby housing community called Gray's Landing. *See generally* Am. Compl., ECF 45. Plaintiffs sued, among others, the Department of Homeland Security. *Id.* Plaintiffs assert that when federal law enforcement used chemical-based crowd control agents ("CCAs") during protests outside of the Portland ICE Facility, those CCAs at times drifted through the air and affected Gray's Landing. *Id.* On January 30, 2026, Plaintiffs filed their operative motion

1

for preliminary injunction, arguing primarily that Defendants have infringed on their substantive due process rights. *See* Pls.' Superseding Mot for Prelim. Inj., ECF 46 ("Mot."). Plaintiffs ask this Court to enjoin Defendants from deploying chemical-based crowd control munitions that are likely to infiltrate Gray's Landing, unless the use of such munitions "is necessary to protect against an imminent and concrete threat to the lives of federal officers or other persons." Mot. at 5 (ECF pagination used throughout). Plaintiffs did not seek expedited discovery beyond deposing Defendants' declarants Roberto Cantu and Timothy Sullivan. The parties completed briefing on the preliminary injunction motion in February. *See* ECF 50–52, 55, 57. The Court then held a one-day evidentiary hearing, ECF 60, and heard oral argument a few days later, ECF 66.

In a different case in this District, a group of journalist and protestor plaintiffs ("Dickinson Plaintiffs") also sued the Department of Homeland Security. *See generally Dickinson v. Trump*, Case No. 3:25-cv-2170-SB ("*Dickinson*"), Am. Compl., ECF 5. On January 27, 2026, the Dickinson Plaintiffs moved for a temporary restraining order, which the court granted. *Dickinson*, ECF 11, 68. Part of that temporary restraining order enjoined the Department of Homeland Security and anyone acting under their direction from "direct[ing] or us[ing] chemical or projectile munitions . . . unless the specific target of such a weapon or device poses an imminent threat of physical harm to a law enforcement officer or other person." *Dickinson*, ECF 68 at 20.

The *Dickinson* Plaintiffs then sought and received expedited discovery, *Dickinson*, ECF 41, 63, and then moved for a preliminary injunction, asking the court to "convert its Temporary Restraining Order into a preliminary injunction covering Plaintiffs and the putative class," *Dickinson*, ECF 94 at 30. In their preliminary injunction motion, the *Dickinson* Plaintiffs claim that federal law enforcement's use of force in front of the Portland ICE Facility violated their First Amendment rights. *Id.* The *Dickinson* Plaintiffs have also moved for class certification, which

2

Judge Simon is expected to resolve alongside the preliminary injunction motion. *See Dickinson*, ECF 130–131, 144, 148. The court in *Dickinson* held a three-day evidentiary hearing. *Dickinson*, ECF 146–147, 151. The court in *Dickinson* is expected to issue a decision on the preliminary injunction motion soon. But as of the filing of this brief, the court in *Dickinson* has yet to rule.

On February 27, this Court ordered the parties to "provide the Court with simultaneous briefing on the effect of the pending preliminary injunction proceedings in *Dickinson*[.]" ECF 68.

## ARGUMENT

### I. To the extent the *Dickinson* court grants a preliminary injunction, this Court should not issue a duplicative injunction.

As explained in Defendants' opposition brief, this Court should not issue a preliminary injunction that is entirely duplicative of another injunction issued in this District. A court in this circuit previously held that "no irreparable harm will result from the denial (without prejudice). . . [of a] duplicative requested injunction." *California v. Trump*, 379 F. Supp. 3d 928, 957 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020); *but see Am. Encore v. Fontes*, 152 F.4th 1097, 1121 (9th Cir. 2025). The Ninth Circuit affirmed the district court decision and held that declining to issue duplicative injunctive relief is "certainly not an abuse of discretion." *California v. Trump*, 963 F.3d 926, 949 (9th Cir. 2020). There, the Ninth Circuit also noted that the plaintiffs could later "seek further remedies in the district court" if, for example, the related injunction is stayed, modified, or vacated by a higher court. *Id.* at 949–50.

Here, if the *Dickinson* court issues a preliminary injunction that duplicates the relief sought here or protects Plaintiffs from the harms they allege by restricting the use of CCAs to limited circumstances like the TRO,[1] this Court should deny Plaintiffs' preliminary injunction motion for

---

[1] The Government notes that it opposes the preliminary injunction sought in *Dickinson*. To the extent an injunction is granted there, the Government will consider all its potential appellate options.

3

lack of irreparable harm (or for any of the many other reasons outlined in Defendants' opposition to Plaintiffs' motion for preliminary injunction). To the extent a higher court stays, modifies, or vacates any preliminary injunction issued in *Dickinson*, Plaintiffs could renew their motion for preliminary injunction at that time.

Alternately, this Court should hold Plaintiffs' preliminary injunction motion in abeyance until the *Dickinson* preliminary injunction is resolved. And then, if Judge Simon issues a preliminary injunction that is at least as broad as the *Dickinson* temporary restraining order, this Court should continue to hold Plaintiffs' preliminary injunction motion in abeyance or stay this case until either final resolution in *Dickinson* is reached or subsequent circumstances (e.g., a stay, modification, or vacatur of any preliminary injunction issued in *Dickinson*) warrant further proceedings or rulings here. Although the claims in these two cases are different, a higher court's ruling on the scope of any preliminary injunction issued in *Dickinson* may shed light on the propriety of Plaintiffs' requested relief, which further counsels in favor of denying Plaintiffs' preliminary injunction motion for lack of irreparable harm, holding the motion in abeyance, or staying this case.

**II.     The *Dickinson* court's findings and conclusions do not bind this Court.**

If this Court goes on to rule on Plaintiffs' motion for preliminary injunction, none of Judge Simon's findings or conclusions of law in *Dickinson* bind this Court. The doctrine of nonmutual collateral estoppel—a doctrine that usually precludes defendants from relitigating issues decided in a different case—does not apply to the federal government. *See United States v. Mendoza*, 464 U.S. 154, 158–60 (1984). This is because applying nonmutual collateral estoppel to the federal government would "thwart the development of important questions of law by freezing the first

4

final decision rendered on a particular issue." *Id.* at 160. In sum, nothing decided in the *Dickinson* case would be binding on this Court.

Even if this Court were to look to the forthcoming *Dickinson* decision for whatever persuasive value it may have, that consideration should be filtered through the party presentation rule. Under the party presentation rule, our system "rel[ies] on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020); *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1054–55 (9th Cir. 2025) (same). That rule is "designed around the premise that the parties know what is best for them[] and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008).

Although *Dickinson* and this case both arise from federal law enforcement's conduct outside of the Portland ICE Facility, the two cases concern different claims and proceeded on different tracks. First, the claims are not the same: *Dickinson* involves protestors and members of the press claiming First Amendment violations based on DHS's use of force outside of the ICE Facility. In contrast, this case involves residents of a nearby apartment complex claiming substantive due process violations in their apartments. In fact, when this Court asked whether it needed to inquire into and assess the lawfulness of federal law enforcement's use of force, Plaintiffs' counsel stated that "I don't think that the Court needs to assess that really at all." February 18, 2026, Hearing Tr., at 24:20–25:4. And unlike the Plaintiffs here, the *Dickinson* Plaintiffs sought and received extensive expedited discovery. So, the claims and record here are different than those in *Dickinson*.

Accordingly, Plaintiffs' preliminary injunction motion should be decided on the record and arguments developed in this case—not on how different claims with a different record are decided

5

in *Dickinson*. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ("The record we have is the record the parties chose to create below—it is the record they deemed sufficient for the district court to decide the preliminary injunction question."). And to the extent this Court determines that the record before it is "limited" or inadequate as compared to the *Dickinson* record, that favors denying—not granting—Plaintiffs' motion for preliminary injunction. *See United Westlabs, Inc. v. Seacoast Lab'y Data Sys., Inc.*, No. CV08-08649-CJC(RNBX), 2010 WL 11519627, at *2 (C.D. Cal. Jan. 7, 2010) ("The Court is not in a position to make that determination based on the limited evidentiary record presented by the parties, therefore, a preliminary injunction is not warranted."); *Waste and Compliance Mgmt., Inc. v. Stericycle, Inc.*, No. 17-cv-967-DSM, 2017 WL 4358145, at *6 (S.D. Cal. Oct. 2, 2017) (denying motion for preliminary injunction, "declin[ing] to resolve these factual disputes on such a limited record," and "find[ing] Plaintiff has not demonstrated a likelihood of success on the merits").

Dated: March 6, 2026                    Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            ANDREW WARDEN
                                            Assistant Director
                                            Federal Programs Branch

                                            */s/ Samuel S. Holt*
                                            SAMUEL S. HOLT
                                            KATHLEEN C. JACOBS
                                            Trial Attorneys
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, N.W.
                                            Washington, D.C. 20005

Telephone: (202) 674-9761
Fax: (202) 616-8470
Samuel.Holt2@usdoj.gov

*Counsel for Defendants*