BRETT A. SHUMATE
Assistant Attorney General
ANDREW I. WARDEN
Assistant Director, Federal Programs Branch
SAMUEL S. HOLT
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 674-9761
Samuel.Holt2@usdoj.gov
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| REACH COMMUNITY DEVELOPMENT, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br><br>　　　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>　　　　　　*Defendants*. | Case No. 3:25-cv-2257 |

### DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6)

Defendants respectfully move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' first amended complaint. In support of this motion, Defendants refer the Court to the memorandum of law that follows this motion. Per Local Rule 7-1, Defendants certify that their counsel conferred in good faith with Plaintiffs' counsel over email but were unable to resolve the issues raised by this motion.

Dated: March 27, 2026    Respectfully submitted,

            BRETT A. SHUMATE
            Assistant Attorney General
            Civil Division

            ANDREW WARDEN
            Assistant Director
            Federal Programs Branch

            */s/ Samuel S. Holt*
            SAMUEL S. HOLT
            KATHLEEN JACOBS
            Trial Attorneys
            U.S. Department of Justice
            Civil Division, Federal Programs Branch
            1100 L Street, N.W.
            Washington, D.C. 20005
            Telephone: (202) 674-9761
            Fax: (202) 616-8470
            Samuel.Holt2@usdoj.gov

            *Counsel for Defendants*

BRETT A. SHUMATE
Assistant Attorney General
ANDREW I. WARDEN
Assistant Director, Federal Programs Branch
SAMUEL S. HOLT
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 674-9761
Samuel.Holt2@usdoj.gov
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| REACH COMMUNITY DEVELOPMENT, *et al.*,<br><br>        *Plaintiffs*,<br><br>        v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>        *Defendants*. | Case No. 3:25-cv-2257 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.     Congress Has Conferred Authority on DHS to Enforce Federal Immigration Laws and Protect Federal Property.................................................................................................. 2

II.    Procedural History ..................................................................................................... 4

LEGAL STANDARD................................................................................................................ 5

ARGUMENT .......................................................................................................................... 7

I.     This Court lacks jurisdiction over this case, because Plaintiffs fail to allege standing to seek prospective relief. ....................................................................................... 7

II.    Plaintiffs' allegations do not state a Fourth Amendment or substantive due process claim............................................................................................................... 10

       A.    Plaintiffs fail to allege a cognizable Fourth Amendment claim. .......................... 10

       B.    Plaintiffs fail to allege a cognizable substantive due process claim. .................... 11

             1.    Plaintiffs do not allege a cognizable deprivation under the Fifth Amendment........................................................................................... 12

             2.    Plaintiffs do not allege that a constitutionally protected liberty or property interest is at stake. .................................................................. 13

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*145 Fisk, LLC v. Nicklas*,
986 F.3d 759 (7th Cir. 2021) ............................................................................... 19

*Arizona v. United States*,
567 U.S. 387 (2012) ............................................................................................... 2

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ............................................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 5, 6

*Baker v. McCollan*,
443 U.S. 137 (1979) ............................................................................................. 13

*BAM Hist. Dist. Ass'n v. Koch*,
723 F.2d 233 (2d Cir. 1983) ............................................................................... 18

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) .................................................................................. 6

*Chicago Headline Club v. Noem*,
168 F.4th 1033 (7th Cir. 2026) ............................................................................ 8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........................................................................................ 7, 8, 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................................... 7, 9

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1988) ............................................................................................. 13

*Collins v. City of Harker Heights*,
503 U.S. 115 (1992) ........................................................................................ 12, 13

*Coshow v. City of Escondido*,
34 Cal. Rptr. 3d 19 (Cal. Ct. App. 2005) ........................................................... 15

*Cruzan ex rel. Cruzan v. Director, Mo. Dep't of Health*,
497 U.S. 261 (1990) ............................................................................................. 15

*Daniels v. Williams*,
474 U.S. 327 (1986) ............................................................................................. 13

*Davidson v. Cannon*,
474 U.S. 344 (1986) ............................................................................................. 12

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) ................................................................................. 14, 15

*EduMoz, LLC v. Republic of Mozambique*,
  2014 WL 12802921 (C.D. Cal. July 21, 2014) ......................................................... 6

*Estelle v. Gamble*,
  429 U.S. 97 (1976) ...................................................................................... 13

*Foli v. Metro. Water Dist. of S. Cal.*,
  592 F. App'x 634 (9th Cir. 2015) ...................................................................... 15

*Gasper v. La. Stadium & Exposition Dist.*,
  418 F. Supp. 716 (E.D. La. 1976), *aff'd per curiam*, 577 F.2d 897 (5th Cir. 1978) ............... 16

*Graham v. Connor*,
  490 U.S. 386 (1989) ..................................................................................... 10

*Guertin v. Michigan*,
  912 F.3d 907 (6th Cir. 2019) ........................................................................... 16

*Hampton v. Steen, No. 2:12-CV-00470-AA*,
  2017 WL 11573592 (D. Or. Nov. 13, 2017) ............................................................... 19

*Hutchins v. District of Columbia*,
  188 F.3d 531 (D.C. Cir. 1999) (en banc) ............................................................... 17

*In re Agent Orange Prod. Liab. Litig.*,
  475 F. Supp. 928 (E.D.N.Y. 1979) ...................................................................... 16

*In re Neagle*,
  135 U.S. 1 (1890) ......................................................................................... 3

*Juster Assocs. v. City of Rutland*,
  901 F.2d 266 (2d Cir. 1990) ............................................................................ 19

*Kachatryan v. Blinken*,
  4 F.4th 841 (9th Cir. 2021) ............................................................................ 14

*Kingsley v. Hendrickson*
  576 U.S. 389 (2015) ...................................................................................... 1

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................ 7

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ............................................................................ 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ........................................................................... 6

iii

*Moreland v. Las Vegas Metro. Police Dep't*,
  159 F.3d 365 (9th Cir. 1998) ............................................................................. 11

*Mortensen v. Cnty. of Sacramento*,
  368 F.3d 1082 (9th Cir. 2004) ............................................................................ 7

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) .............................................................................. 5

*Ne. Jet Ctr., Ltd. v. Lehigh-Northampton Airport Auth.*,
  No. CIV. A. 90-CV-1262, 1997 WL 230821 (E.D. Pa. May 5, 1997) ................................... 19

*Nelsen v. King Cnty.*,
  895 F.2d 1248 (9th Cir. 1990) ............................................................................ 7

*Noem v. Vasquez Perdomo*,
  146 S. Ct. 1 (2025) ......................................................................................... 7

*Nunez ex rel. Nunez v. City of San Diego*,
  114 F.3d 935 (9th Cir. 1997) ............................................................................ 17

*O'Bannon v. Town Ct. Nursing Ctr.*,
  447 U.S. 773 (1980) ........................................................................................ 12

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ......................................................................................... 8

*Paul v. Davis*,
  424 U.S. 693 (1976) ........................................................................................ 18

*Phantom of E. PA v. N.J. State Police*,
  2008 WL 2039461 (E.D. Pa. May 12, 2008) .............................................................. 18

*Porteous v. Cap. One Servs. II, LLC*,
  809 F. App'x 354 (9th Cir. 2020) .......................................................................... 6

*Puente v. City of Phoenix*,
  123 F.4th 1035–54 (9th Cir. 2024) ........................................................................ 10

*Regino v. Staley*,
  133 F.4th 951–60 (9th Cir. 2025) ..................................................................... 13, 14

*Riggins v. Nevada*,
  504 U.S. 127–35 (1992) ................................................................................ 15, 16

*Rochin v. California*,
  342 U.S. 165 (1952) ........................................................................................ 15

*Rosenblum v. Does 1-10*,
  474 F. Supp. 3d 1128 (D. Or. 2020) .................................................................. 7, 8, 9

Defendants' Memorandum of Law in Support of Motion to Dismiss

*Saenz v. Roe*,
   526 U.S. 489 (1999) ........................................................................................ 17

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ........................................................................ 5

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
   343 F.3d 1036 (9th Cir. 2003) ..................................................................... 6, 8

*Tanner v. Armco Steel Corp.*,
   340 F. Supp. 532 (S.D. Tex. 1972) ................................................................ 16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413–31 (2021) ................................................................................... 5

*Tri-Cnty. Concerned Citizens Ass'n v. Carr,*
   2001 WL 1132227 (E.D. Pa. Sep. 18, 2001) .................................................. 17

*Union Pac. Ry. Co. v. Botsford*,
   141 U.S. 250 (1891) ....................................................................................... 15

*Updike v. Multnomah Cnty.*,
   870 F.3d 939 (9th Cir. 2017) ........................................................................... 8

*Vasquez Perdomo v. Noem*,
   148 F.4th 656 (9th Cir. 2025) .......................................................................... 7

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) ............................................................................. 14, 15, 16

*Wedges/Ledges of Cal., Inc. v. City of Phoenix*,
   24 F.3d 56 (9th Cir. 1994) ............................................................................. 18

*Westwood v. City of Hermiston*,
   787 F. Supp. 2d 1174 (D. Or. 2011) .............................................................. 19

*Winston v. Lee*,
   470 U.S. 753 (1985) ....................................................................................... 15

*WMX Techs., Inc. v. Miller*,
   197 F.3d 367 (9th Cir. 1999) ............................................................... 18, 19, 20

**Constitutional Provisions**

U.S. Const. amend. V ............................................................................................ 11

**Statutes**

6 U.S.C. § 202 ........................................................................................................ 3

6 U.S.C. § 211 ........................................................................................................ 2

Defendants' Memorandum of Law in Support of Motion to Dismiss

6 U.S.C. § 252 .................................................................................................... 3

8 U.S.C. § 1103 .................................................................................................. 2

40 U.S.C. § 1315 ............................................................................................... 3

**Rules**

Federal Rule of Civil Procedure 12 ................................................................. *passim*

**Other Authorities**

DHS, Update to the Department Policy on the Use of Force (Feb. 6, 2023),
    https://perma.cc/K996-RNFR ("DHS Policy") .........................................................3, 4

Defendants' Memorandum of Law in Support of Motion to Dismiss

**INTRODUCTION**

Plaintiffs advance novel substantive due process and Fourth Amendment theories based on sporadic incidents primarily occurring months ago. As such, legal obstacles pervade Plaintiffs' amended complaint. Plaintiffs are residents and owners of a housing complex called Gray's Landing near the Immigration and Customs (ICE) facility in downtown Portland. Plaintiffs allege that their constitutional rights have been violated because chemical irritants used by law enforcement for crowd control have allegedly drifted through the air away from protests and temporarily affected Gray's Landing. Those allegations rest on a handful of discrete incidents occurring during parts of 2025 and on a few occasions in January 2026.

Although this Court found that the post-complaint preliminary injunction record supported extraordinary injunctive relief—a conclusion with which Defendants disagree and have appealed to the Ninth Circuit—the allegations in the amended complaint are factually and legally insufficient to state a claim.

For starters, Plaintiffs' claims should be dismissed for lack of jurisdiction. Plaintiffs fail to allege standing to seek prospective relief. They do not allege facts showing an immediate and certainly impending threat of future injury based on isolated, sporadic incidents.

On the merits, Plaintiffs' Fourth Amendment and substantive due process claims should be dismissed for failure to state a claim. The Court previously rejected Plaintiffs' Fourth Amendment claim at the preliminary injunction stage as unlikely to succeed. The Court should now dismiss that claim as a matter of law for the same reasons. Plaintiffs do not allege any facts showing that Defendants acted with an objective intent to restrain. Thus, Plaintiffs cannot state a Fourth Amendment claim.

Defendants' Memorandum of Law in Support of Motion to Dismiss

Plaintiffs' substantive due process claim is an attempt to "tortify the [Constitution]," *Kingsley v. Hendrickson*, 576 U.S. 389, 408 (2015) (Scalia, J., dissenting), by improperly transforming what is at most a nuisance claim, not a constitutional violation. Courts around the country have consistently rejected attempts to expand the notion of bodily integrity or liberty to include the right to be free from incidental exposure to airborne chemical irritants. Courts have similarly rejected—or have not recognized—Plaintiffs' purported property and right-of-movement theories.

Under Plaintiffs' boundless theory, federal and state law enforcement officers would violate the Constitution whenever they deploy airborne crowd-control devices that inadvertently drift into someone's home or business, even if the use of such devices is otherwise entirely lawful. That is not and cannot be the law. Neither the Due Process Clause nor the Fourth Amendment precludes law enforcement agencies from using crowd control devices near populated areas to address safety and security concerns from obstructive or dangerous crowds. The Constitution does not compel law enforcement officers to rely solely on face-to-face physical confrontation with unlawful crowds simply because airborne irritants might drift to nearby buildings.

This Court should dismiss this case for lack of jurisdiction and for failure to state a claim.

## BACKGROUND

### I.     Congress Has Conferred Authority on DHS to Enforce Federal Immigration Laws and Protect Federal Property

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). DHS is empowered to "control and guard the boundaries and borders of the United States against the illegal entry of aliens." 8 U.S.C. § 1103(a)(5). U.S. Customs and Border Protection (CBP) is an agency within DHS charged with, among other things, "enforc[ing] and administer[ing] all

Defendants' Memorandum of Law in Support of Motion to Dismiss

immigration laws." 6 U.S.C. § 211(c)(8). ICE, another agency within DHS, is likewise charged with, among other things, enforcing and administering federal immigration laws. *See, e.g.,* 6 U.S.C. §§ 202, 252(a)(3). ICE has a facility located at 4310 South Macadam Avenue, Portland, Oregon ("ICE Facility"). The protection of the ICE Facility falls primarily within the responsibilities of the Federal Protective Service (FPS), the law enforcement agency within DHS charged with protecting federal government facilities and persons therein. *See* 40 U.S.C. § 1315.

The federal government has broad authority to protect federal property, personnel, and government functions. Congress has authorized DHS to "protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government." 40 U.S.C. § 1315(a). And the President and Executive Branch have a duty to protect federal officials, federal property, and the performance of federal functions. *See In re Neagle*, 135 U.S. 1, 64–68 (1890).

DHS has issued policy guidance on the use of force by its personnel. *See* DHS, Update to the Department Policy on the Use of Force (Feb. 6, 2023), https://perma.cc/K996-RNFR ("DHS Policy"). The general principle undergirding DHS's Use of Force Policy is "respect for human life and the communities . . . serve[d]." *Id.* § III.A. To that end, federal law enforcement should only use force when no reasonably effective, safe, and feasible alternative appears to exist. *Id.* § II.B. However, DHS authorizes officers and agents to use "the level of force that is objectively reasonable in light of the facts and circumstances confronting the [law enforcement officer] at the time force is applied," recognizing that officers and agents are "often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving." *Id.* §§ II.B & II.C.2. The policy states that law enforcement "should seek to employ tactics and techniques that effectively bring an incident under control while promoting the safety of [the officer] and the public, and that minimize the risk of unintended injury or serious property damage." *Id.* § III.C.

Defendants' Memorandum of Law in Support of Motion to Dismiss

But this does not mean that law enforcement must "meet force with equal or lesser force," "retreat to avoid the reasonable use of force," or "wait for an attack before using reasonable force to stop a threat." *Id.* § III.D.

## II.    Procedural History

This case relates to DHS's response to violent and disruptive protests at the Portland ICE Facility and alleged downstream impacts of those protests on a nearby housing community called Gray's Landing. Gray's Landing sits diagonally across the Portland ICE Facility. First Am. Compl. ¶ 41, ECF 45 ("Am. Compl."). Plaintiffs are nine residents at Gray's Landing ("Resident Plaintiffs") and three organizations that own and manage Gray's Landing ("REACH Plaintiffs"). Am. Compl. ¶¶ 10–21. Plaintiffs sued in December based on alleged conduct that occurred in June, July, and October 2025.  *See generally* ECF 1. In January, Plaintiffs filed an amended complaint, alleging additional harm from a few incidents in January. Am. Compl. ¶¶ 64–72.

Plaintiffs allege that when federal law enforcement personnel used crowd control munitions during protests, the chemical irritants used at times drifted through the air and affected Gray's Landing. *See generally* Am. Compl. As such, Plaintiffs bring two claims: a Fourth Amendment claim and substantive due process claim. Am. Compl. ¶¶ 117–156. They seek declaratory and injunctive relief. *See* Am. Compl., Request for Relief ¶¶ A–B.

On January 30, 2026, Plaintiffs filed their operative motion for preliminary injunction. ECF 46 ("Mot."). And on March 6, 2026, this Court granted that motion, finding that Plaintiffs likely had standing and were likely to succeed on the merits of their substantive due process theory. Op. and Order at 26–28, 30–48, ECF 75 ("PI Op."). However, the Court found Plaintiffs were not likely to succeed on the merits of their Fourth Amendment claim. *Id.* at 29. Defendants appealed the preliminary injunction opinion and order to the Ninth Circuit, ECF 77, and sought an

Defendants' Memorandum of Law in Support of Motion to Dismiss

immediate administrative stay and a stay pending appeal with the Ninth Circuit, *see Reach Cmty.*
*Dev. v. U.S. Dep't Homeland Sec.*, Case No. 26-1575, ECF 3 (Mar. 16, 2026 9th Cir.). On March
25, 2026, the Ninth Circuit administratively stayed the preliminary injunction to "maintain the
status quo" and "minimize harm while an appellate court deliberates." *See Reach Cmty. Dev. v.*
*U.S. Dep't Homeland Sec.*, Case No. 26-1575, ECF 9 (9th Cir. Mar. 25, 2026). The Ninth Circuit
also ordered expedited briefing on the motion to stay pending appeal and to stay district court
proceedings; the motion will be fully briefed and argued by April 7, 2026. *Id.*

## LEGAL STANDARD

Defendants move to dismiss Plaintiffs' amended complaint for lack of jurisdiction under
Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of
Civil Procedure 12(b)(6).

A motion to dismiss under Rule 12(b)(1) tests the Court's jurisdiction over the case and
allows a court to dismiss a complaint upon finding that it lacks subject matter jurisdiction. *Safe Air*
*for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A jurisdictional attack may be facial
or factual. "In a facial attack, the challenger asserts that the allegations contained in a complaint
are insufficient on their face to invoke federal jurisdiction." *Id.* The plaintiff bears the burden of
demonstrating jurisdiction. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). To invoke
the jurisdiction of the federal courts under Article III of the Constitution, a plaintiff must establish
that he or she has standing to sue. *Id.*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and
allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim
upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In
deciding a motion to dismiss, the court accepts all factual allegations as true, *Ashcroft v. al-Kidd*,

563 U.S. 731, 734 (2011), but need not accept "legal conclusions" as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In sum, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Plaintiffs cannot defend against this motion by relying on the declarations or testimony in support of their motion for preliminary injunction. When evaluating a motion to dismiss under Rule 12(b)(6), "[r]eview is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). The same is true where, as here, Defendants bring a purely facial jurisdictional challenge to the complaint. *See EduMoz, LLC v. Republic of Mozambique*, 2014 WL 12802921, at *8 (C.D. Cal. July 21, 2014) (declining to consider extrinsic evidence when considering whether plaintiff has standing to sue because "defendants' motion is a facial challenge, which means the court may look only to the complaint and any documents attached thereto"); *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (A court addressing a facial attack "confin[es] the inquiry to allegations in the complaint"). The declarations and testimony that Plaintiffs have produced throughout the preliminary injunction proceedings are not appropriate for consideration as part of this motion, because the amended complaint does not "necessarily rel[y]" on those materials—the amended complaint does not refer to any of the declarations, and the declarations are not "central to the [Plaintiffs'] claim." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Porteous v. Cap. One Servs. II, LLC*, 809 F. App'x 354, 356 (9th Cir. 2020) (holding that a Complaint necessarily cannot reference or rely on declarations that "postdate the complaint"). Nor would those

Defendants' Memorandum of Law in Support of Motion to Dismiss

declarations be appropriate for judicial notice.  A court can take judicial notice of the *existence* of publicly filed documents, but "a court cannot take judicial notice of *disputed* facts contained in . . . public record[s]." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (emphasis added). So, although this Court must accept as true all factual allegations set forth in the amended complaint, this Court cannot accept as true—or otherwise rely on—factual allegations made in other public filings. *Id.*

## ARGUMENT

I.    **This Court lacks jurisdiction over this case, because Plaintiffs fail to allege standing to seek prospective relief.**

To demonstrate standing to obtain prospective relief, a plaintiff must allege "a very significant possibility of *future* harm." *Mortensen v. Cnty. of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004) (emphasis added and citation omitted). And the required "threatened injury must be *certainly impending*," not merely "*possible.*" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Such standing "does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2 (2025) (Kavanaugh, J., concurring in grant of application for stay) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 (1983)). Allegations of past injury might support a remedy at law, but they are insufficient to support a request for prospective relief. *Mortensen*, 368 F.3d at 1086; *Nelsen v. King Cnty.*, 895 F.2d 1248, 1251 (9th Cir. 1990) (holding that to demonstrate standing to seek injunctive relief "past exposure to harm is largely irrelevant"). Rather, "[t]o have standing to seek an injunction against future unlawful conduct, a plaintiff must show a 'sufficient likelihood' that they will suffer a similar injury in the future." *Vasquez Perdomo v. Noem*, 148 F.4th 656, 673 (9th Cir. 2025).

Applying these principles, courts frequently reject requests for injunctive relief when predicated on isolated instances of alleged misconduct by law enforcement. *See, e.g.*, *Lyons*, 461

U.S. at 101–02; *Rosenblum v. Does 1-10*, 474 F. Supp. 3d 1128, 1137 (D. Or. 2020); *cf. Chicago Headline Club v. Noem*, 168 F.4th 1033, 1037 (7th Cir. 2026). For example, in *Rosenblum*, the court held that plaintiffs lacked standing based on allegations of illegal seizures by law enforcement; the court found that unless the plaintiffs could show that "all of Defendants' seizures are illegal" or that they are under direct orders to make random arrests without probable cause, there could be no real or immediate threat of future harm. 474 F. Supp. 3d at 1136–37 (citing *Lyons*, 461 U.S. at 105–06). Even repeated conduct is insufficient to establish standing for prospective relief where the alleged injury is not certainly impending. *See Updike v. Multnomah Cnty.*, 870 F.3d 939, 947 (9th Cir. 2017) (denying injunctive relief to a plaintiff challenging the lack of American Sign Language interpreters in pretrial detainment and at arraignment, even though he had been booked at the same correctional facility five times before, because "standing for injunctive relief requires that a plaintiff show a 'real and immediate threat of repeated injury.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Here, Plaintiffs have failed to allege standing to seek prospective relief. Although this Court determined that Plaintiffs likely had standing to seek a preliminary injunction based on the evidentiary record before the Court, PI Op. at 26, that record cannot be considered when deciding this purely facial challenge to the amended complaint. *See Savage*, 343 F.3d at 1039 n.2. Defendants respectfully disagree with the Court's prior standing determination and urge the Court to reach a different conclusion here. In its opinion, the Court adopted Plaintiffs' formulation of their standing burden: that they have standing because Defendants "have given no indication that they will refrain from deploying the chemical munitions in huge volumes if faced with large protests outside the ICE facility in the future." Am. Compl. ¶ 73. But Plaintiffs' burden is not to show a real and certainly impending threat that federal law enforcement will merely use crowd

Defendants' Memorandum of Law in Support of Motion to Dismiss

control munitions at the Portland ICE facility at some unspecified point in the future. Under *Lyons*, the question is whether any given plaintiff has alleged "a sufficient likelihood" that each specific plaintiff will "again be wronged in a similar way." 461 U.S. at 111. So, Plaintiffs here must show a real and certainly impending threat that protests will occur at or near the Portland ICE facility; that those protests will cause law enforcement to use crowd control munitions; that the chemical irritants used in the munitions will float through the air in the direction of Gray's Landing; and that the chemical irritants will affect these particular Plaintiffs in such a way that substantive due process rights are deprived. And all those possibilities will have to converge at the same time. That alone is a highly "speculative chain of possibilities" that "does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410. Plaintiffs' standing is even more speculative since Plaintiffs here do not even attempt to allege that every use of crowd control munitions has affected Gray's Landing or that law enforcement are under specific orders to use such munitions in a way that affects Gray's Landing. *See Rosenblum*, 474 F. Supp. 3d at 1137.

Moreover, Plaintiffs' allegations of exposure to airborne chemical irritants are vague and largely outdated. For example, in their operative complaint, Plaintiffs primarily rely on generalized references to months—"sometime in June"—when Gray's Landing residents were affected, rarely specifying the day when exposure actually occurred. *See e.g.*, Am. Compl. ¶ 74 (vaguely describing effects on Gray's Landing residents "[t]hroughout the period since June 2025"); *id.* ¶ 87 (describing alleged harm to Susan Dooley in "October 2025"); *id.* ¶ 90 (describing alleged harm to Rebecca Roe "from June through November"). And apart from a few incidents in January, most of the dates Plaintiffs identify are months old—from summer 2025 and October 2025. In sum, Plaintiffs rely on vague allegations to string together a chain of possibilities. Plaintiffs have thus

Defendants' Memorandum of Law in Support of Motion to Dismiss

failed to allege that they have Article III standing. As such, this Court should dismiss Plaintiffs' claims under Rule 12(b)(1) for lack of jurisdiction.

**II.    Plaintiffs' allegations do not state a Fourth Amendment or substantive due process claim.**

### A. Plaintiffs fail to allege a cognizable Fourth Amendment claim.

Plaintiffs theorize that Defendants "use of force has restrained the Resident Plaintiffs' 'liberty of movement," and thus they have been seized. Mot. at 43–44. Plaintiffs are wrong. The Fourth Amendment protects against "unreasonable searches and seizures." Thus, when the use of force entails a "seizure" of a "person," courts evaluate whether the force was excessive under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). But before even deciding whether law enforcement acted reasonably, Plaintiffs must establish that they were seized. To establish a seizure, Plaintiffs must allege sufficient facts showing that Defendants manifested an objective intent to restrain. *Puente v. City of Phoenix*, 123 F.4th 1035, 1050–54 (9th Cir. 2024).

In *Puente*, the Ninth Circuit held that the Phoenix police's dispersal of an uncompliant crowd by airborne chemical irritants (e.g., tear gas and pepper spray) and auditory or visual irritants was not a "seizure" within the meaning of the Fourth Amendment. *Id.* at 1051-54. The court explained that "an application of force with an objective intent merely to *disperse* or *exclude* persons from an area—and *without* any measures objectively aimed at detaining or confining them in the process—does not involve the necessary 'intent to *restrain*' that might give rise to a 'seizure.'" *Id.* at 1052.

Here, Plaintiffs have not alleged facts showing Defendants acted with an objective intent to restrain Plaintiffs. In its preliminary injunction opinion, this Court correctly held that the record before it did not show an objective intent to restrain. *See* PI Op. at 20. That same determination

10

Defendants' Memorandum of Law in Support of Motion to Dismiss

applies to Plaintiffs' deficient amended complaint. Plaintiffs allege that "[a]s a result of the chemical munitions, Plaintiffs have been unable to leave their apartments, and in some instances have had to seal themselves in their closets, bathrooms, or bedrooms." Am. Compl. ¶ 152. That allegation lacks facial plausibility since crowd control devices cannot lock someone into an apartment. But even if such an allegation were credited, it does not establish or even hint at Defendants having an objective intent to restrain Plaintiffs. *See* PI Op. at 29 ("To whatever extent Defendants impacted the Resident Plaintiffs' freedom of movement within or outside of their homes by using chemical munitions to disperse protesters, there is insufficient evidence of an objective intent by Defendants to detain Plaintiffs."). Thus, Plaintiffs have failed to allege a cognizable Fourth Amendment claim, and it should be dismissed under Rule 12(b)(6) for failure to state a claim.

### B.  Plaintiffs fail to allege a cognizable substantive due process claim.

This case has already seen extensive proceedings relating to Plaintiffs' Fifth Amendment substantive due process claim. Defendants have argued throughout those proceedings that Plaintiffs' claim is both factually deficient and legally flawed and thus cannot provide a basis for any relief. Although Defendants recognize that this Court has granted preliminary injunctive relief to Plaintiffs based on their substantive due process claim, Defendants respectfully submit that Plaintiffs' claim should be dismissed. *See* Am. Compl. ¶¶ 117–146.

The Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To establish a substantive due process violation, Plaintiffs must show both that Defendants deprived Plaintiffs of a liberty or property interest of constitutional magnitude. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir. 1998). Plaintiffs fail to allege a deprivation of a cognizable substantive due process right.

Defendants' Memorandum of Law in Support of Motion to Dismiss

1.  Plaintiffs do not allege a cognizable deprivation under the Fifth Amendment.

Plaintiffs' Fifth Amendment theory fails because due process "does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 789 (1980). There is a "simple distinction between government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally." *Id.* at 788. The latter does not constitute a "deprivation of an interest in life, liberty, or property," *id.* at 787, because "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action," *id.* at 789. Thus, that a government action "may lead to severe hardship" for Plaintiffs "does not turn the [action] into a governmental decision to impose that harm" on Plaintiffs. *Id.*; *see also id.* at 784 (holding that decision to decertify skilled-nursing facility did not deprive the facility's residents of liberty).

*O'Bannon* forecloses Plaintiffs' Fifth Amendment claim. Incidental effects from dissipating aerosolized chemical irritants deployed against third-party protestors do not constitute a deprivation of Plaintiffs' liberty. Although this Court distinguished *O'Bannon* as a procedural due process case, PI Op. at 35–36, Defendants respectfully disagree with that determination and urge a different result here. For both substantive and procedural due process claims, "the Fourteenth Amendment does not require a remedy when there has been no 'deprivation' of a protected interest." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). And *O'Bannon*'s conclusion makes good sense in the substantive-due-process context, where courts are "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Plaintiffs' theory vastly expands substantive due process to include incidental harms from otherwise lawful and constitutional government action. Under Plaintiffs' due process theory, the

Constitution would be violated every time law enforcement officers deploy chemical irritants near homes—even if that force is reasonable and necessary to protect officers and public safety—because it is possible that residents may be affected as the aerosolized chemicals dissipate.

To be sure, Plaintiffs have alleged suffering physical discomfort. At most, however, that harm could give rise to tort claims, not constitutional claims. "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1988). Nor does it "supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Just as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official," *Baker v. McCollan*, 443 U.S. 137, 146 (1979), a nuisance does not become a substantive due process violation merely because the actor is the government.

2. <u>Plaintiffs do not allege that a constitutionally protected liberty or property interest is at stake.</u>

Even assuming that Plaintiffs alleged a deprivation, they also fail to allege that they have suffered a deprivation of a cognizable substantive due process right. "Substantive due process protects individuals from state action that interferes with fundamental rights." *Regino v. Staley*, 133 F.4th 951, 959–60 (9th Cir. 2025). Courts must "exercise the utmost care whenever . . . asked to break new ground in this field." *Collins*, 503 U.S. at 125. Thus, to establish a new fundamental right, a plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" and "[w]ith that careful description in mind," prove that "the asserted interest is 'objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty,

Defendants' Memorandum of Law in Support of Motion to Dismiss

such that neither liberty nor justice would exist if [it was] sacrificed.'" *Regino*, 133 F.4th at 960 (second alteration in original) (first quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); and then quoting *Kachatryan v. Blinken*, 4 F.4th 841, 858 (9th Cir. 2021)).

Plaintiffs theorize that Defendants are depriving them of three liberty or property rights: the right to bodily integrity; the right to liberty of movement; and the right to possess, use, and enjoy one's property. Am. Compl. ¶¶ 119–123. Each of Plaintiffs' theories stretches the Due Process Clause well beyond its established and reasonable limits.

**Bodily Integrity.** Although this Court preliminarily determined that Plaintiffs had established a cognizable bodily integrity theory, PI Op. at 32–33, Defendants respectfully disagree with that determination and urge the Court to reach a different result at this stage. Plaintiffs' bodily integrity theory flouts the well-established limits on substantive due process to find a new fundamental right to bodily integrity free from the nonconsensual exposure and ingestion of toxic airborne substances. Am. Compl. ¶¶ 120–121.

Plaintiffs have still failed to identify any history or tradition supporting this newfound fundamental right. The Supreme Court held in *Dobbs* that where plaintiffs identify "no state constitutional provision, no statute, no judicial decision, no learned treatise recognizing the purported right," plaintiffs fail to establish a fundamental right. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 251 (2022); *see also id.* at 242–49 (rejecting proposed fundamental right after considering "eminent common-law authorities (Blackstone, Coke, Hale, and the like)," "English cases dating all the way back to the 13th century," "[m]anuals for justices of the peace printed in the Colonies in the 18th century," early colonial cases, state statutes at the time the Fourteenth Amendment was ratified and soon after, and laws "in the Territories that would become the last 13 States"). "Historical inquiries of this nature are essential whenever [courts] are asked to

14

Defendants' Memorandum of Law in Support of Motion to Dismiss

recognize a new component of the 'liberty' protected by the Due Process Clause because the term 'liberty' alone provides little guidance." *Id.* at 239. When courts "ignore[] the appropriate limits imposed by respect for the teachings of history," courts "fall[] into . . . freewheeling judicial policymaking[.]" *Id.* at 240 (cleaned up).

To compensate for the absence of any historical tradition for this bodily integrity theory, Plaintiffs have wrongly invoked Supreme Court cases recognizing a different fundamental right, that of bodily integrity free from nonconsensual medical procedures and treatment. *See, e.g.*, *Cruzan ex rel. Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 280-87 (1990) (nonconsensual life-sustaining artificial feeding and hydration); *Winston v. Lee*, 470 U.S. 753, 759 (1985) (nonconsensual surgery); *Rochin v. California*, 342 U.S. 165, 172 (1952) (forcible stomach pumping); *Riggins v. Nevada*, 504 U.S. 127, 134–35 (1992) (forcible medication); *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891) (nonconsensual surgical examination). As the Supreme Court explained, this right is based on "the common-law rule that forced medication was a battery, and the long legal tradition protecting the decision to refuse unwanted medical treatment" and is "not simply deduced from abstract concepts of personal autonomy." *Glucksberg*, 521 U.S. at 725. Plaintiffs ignore this key principle of substantive due process by focusing on an abstract concept of "bodily integrity" instead of the history and tradition of "the asserted right" itself. *Id.* at 723.

Recognizing the historical backdrop, the Ninth Circuit has held that there is no fundamental right of bodily integrity free from nonconsensual exposure to fluoridated public drinking water because that "is not the type of invasive medical procedure that implicates the constitutional right to refuse medication." *Foli v. Metro. Water Dist. of S. Cal.*, 592 F. App'x 634, 635 (9th Cir. 2015); *see also Coshow v. City of Escondido*, 34 Cal. Rptr. 3d 19, 31 (Cal. Ct. App. 2005) (same). Plaintiffs have tried to distinguish *Coshow* on the ground that fluoride has beneficial effects while

15
Defendants' Memorandum of Law in Support of Motion to Dismiss

chemical irritants do not. But both harmful and beneficial medical treatment constitutes medical battery—the historical basis for the fundamental right of bodily integrity free from nonconsensual medical treatment. *See Riggins*, 504 U.S. at 134–35. So, that rationale cannot provide a basis for distinguishing this precedent.

And given the Ninth Circuit's holding in *Foli*, Plaintiffs mistakenly relied on *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019), which recognized a fundamental right of bodily integrity free from intentionally contaminated public drinking water. *Foli* rejected such a right. Regardless, *Guertin* does not apply here because it explained that the contamination was analogous to nonconsensual medical treatment. *Id.* at 920-22. Chemical irritants deployed as a crowd-control technique on third-party protestors bear no similarity to experimental medications given unknowingly to nearby residents.

Courts around the country have similarly rejected claims proposing fundamental rights of bodily integrity free from nonconsensual exposure to airborne contaminants. *See, e.g.*, *Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 536 (S.D. Tex. 1972); *Gasper v. La. Stadium & Exposition Dist.*, 418 F. Supp. 716, 721 (E.D. La. 1976), *aff'd per curiam*, 577 F.2d 897, 898–99 (5th Cir. 1978); *In re Agent Orange Prod. Liab. Litig.*, 475 F. Supp. 928, 934 (E.D.N.Y. 1979). Plaintiffs attempted to distinguish these cases because government actors had not emitted the airborne contaminants. But those cases explicitly acknowledge the more fundamental point that there is no constitutional right to be free from nonconsensual exposure to airborne contaminants, which, at the very least, illustrates that Plaintiffs' purported right is not "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 721 (citation omitted).

**Right of Movement.** Plaintiffs next allege that Defendants have "interfered with Resident Plaintiffs' liberty by effectively confining them to their apartments." Am. Compl. ¶ 122. They

claim that this right is infringed because they have had to place towels under their doors and have, at times, avoided using common areas and going outside. *Id.* ¶¶ 75, 122.

Plaintiffs are wrong again on the law. While the Supreme Court has recognized that there is a fundamental right to travel, that right has been cabined to protecting interstate travel, *Saenz v. Roe,* 526 U.S. 489 (1999), and protecting against government restrictions on all movement on public streets and public property like curfews, *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997). As a D.C. Circuit en banc plurality described it, the right to travel is a narrow one, originating from "a concern over state discrimination against outsiders rather than concerns over the general ability to move about." *Hutchins v. District of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999) (en banc) (plurality) (citing Supreme Court cases). Plaintiffs here cite no case finding that the fundamental right to travel is infringed when residents choose to avoid common areas in a housing complex or choose not to go outside. Plaintiffs' theory of the right to travel fails because it has no basis in caselaw or history.

**Property Interest.** Although individuals indisputably have a property interest in the ownership of their homes, there is no constitutionally protected property interest to use and enjoy one's home however one chooses. Plaintiffs claim that chemical irritants deployed as a crowd-control technique have traveled through the air and temporarily affected their use and enjoyment of their apartments. Am. Compl. ¶¶ 123–124. But that is not a constitutional deprivation of a property interest.

Caselaw establishes that there is no cognizable deprivation of a property interest when a plaintiff asserts temporary interferences with the use and enjoyment of property. For example, in *Tri-Cnty. Concerned Citizens Ass'n v. Carr*, the court was "hard pressed to find either controlling or persuasive authority which establishes a fundamental right in . . . the unfettered use and

17

Defendants' Memorandum of Law in Support of Motion to Dismiss

enjoyment of one's land." 2001 WL 1132227, at *3 (E.D. Pa. Sep. 18, 2001), *aff'd*, 47 F. App'x 149 (3d Cir. 2002). As such, the court held that the plaintiffs' claimed "right not to be subjected to common nuisances such as odors, noise, pollution, dirt and other noxious and dangerous situations . . . fail[ed] to raise a constitutionally protected interest." *Id.* at *4; *see also Phantom of E. PA v. N.J. State Police*, 2008 WL 2039461, at *2 (E.D. Pa. May 12, 2008) ("Even when real property ownership is at issue . . . substantive due process does not protect mere 'interfere[nce] with the use and enjoyment of a plaintiff's land[.]'" (citation omitted)). Similarly, the Second Circuit has found that government-caused declines in property value also does not amount to a constitutional deprivation of property, finding that the Due Process Clause does not exist to ensure "the maintenance of transient levels of the quality of neighborhood life." *BAM Hist. Dist. Ass'n v. Koch*, 723 F.2d 233, 237 (2d Cir. 1983). Accordingly, Plaintiffs' asserted harms—even if true— do not amount to a constitutional deprivation of property.

Plaintiffs then assert that the REACH Plaintiffs have suffered constitutional deprivations to their "reputation, business relationships, and goodwill." Am. Compl. ¶ 124. That theory also fails.

First, the Ninth Circuit has held "that reputation, without more, is not a protected constitutional interest." *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 374 (9th Cir. 1999) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

Second, business goodwill is only a constitutionally protected property interest when business goodwill is properly characterized as a property interest under state law. *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 65 (9th Cir. 1994). Even if "business goodwill" is a constitutionally protected property interest in Oregon, Plaintiffs must establish through specific evidence that it has a monetary "goodwill value," as Oregon courts "decline[] to assign a value for

18

Defendants' Memorandum of Law in Support of Motion to Dismiss

goodwill" based on "general assertion[s]" that goodwill exists. *See Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1197 (D. Or. 2011), *aff'd*, 496 F. App'x 728 (9th Cir. 2012). The REACH Plaintiffs here do not allege a specific value of their business goodwill, making it impossible to determine whether any goodwill exists or has been lost. They assert only a vague and general loss of goodwill—exactly the type found insufficient in *Westwood*. And in Oregon, Plaintiffs must also show a loss that is "above and beyond their 'personal services and . . . ability to generate new work.'" *Hampton v. Steen*, No. 2:12-CV-00470-AA, 2017 WL 11573592, at *9 (D. Or. Nov. 13, 2017); *see also Westwood*, 787 F. Supp. 2d at 1197 (defining goodwill in Oregon as something "acquired beyond the mere value of what it sells"). And the REACH Plaintiffs do not allege any loss that is above and beyond their normal service of providing people with safe and affordable housing.

Third, Defendants are not aware of any due process right to "business relationships." In fact, numerous courts have indicated that no such property right exists under the Due Process Clause. *See 145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 770 (7th Cir. 2021) ("Illinois tort law does not transform a business relationship into a constitutionally protected property right."); *Juster Assocs. v. City of Rutland,* 901 F.2d 266, 272 (2d Cir. 1990) (finding no "constitutionally protected property interest" in an asserted loss of business relationships); *Ne. Jet Ctr., Ltd. v. Lehigh-Northampton Airport Auth.*, No. CIV. A. 90-CV-1262, 1997 WL 230821, at *9 (E.D. Pa. May 5, 1997) ("Despite the interest that tort and contract law has in preserving business relationships, this is not a property interest worthy of constitutional protection.").

Even if this Court determined that the REACH Plaintiffs had some constitutionally protected property interest in its reputation and business goodwill, Plaintiffs' injury must "involve[] much more than an injury to the reputation of a business" to implicate due process.

Defendants' Memorandum of Law in Support of Motion to Dismiss

*WMX Techs., Inc.*, 197 F.3d at 375–76. Plaintiffs must show "actual, direct interference" with their business to rise to the level of a constitutionally protected property interest. *Id.* For example, the Ninth Circuit has held that even "defamatory remarks made to the county and the public generally" that affected the plaintiff's "business reputation" and goodwill was "not sufficient to satisfy the requirement that a constitutionally protected property interest be at stake." *Id.* 376.

The REACH Plaintiffs here fall far short of alleging that Defendants "actual[ly]" and "direct[ly]" interfered with their business. *Id*. Plaintiffs allege only that Defendants' conduct damaged the REACH Plaintiffs' business relationships and goodwill. But "damage to the reputation of a business, without more, does not rise to the level of a constitutionally protected property interest." *Id.* In fact, Plaintiffs' claims here—that chemical irritants wafted through the air and caused damage to their reputation and business—is much weaker than the claims of broad public defamation found insufficient in *WMX Techs., Inc.* Plaintiffs' theory is thus meritless.

Plaintiffs have failed to allege a deprivation of a cognizable due process right. As such, this Court should dismiss Plaintiffs' due process claim under Rule 12(b)(6) for failure to state a claim.

## **CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint in its entirety for lack of jurisdiction and failure to state a claim.

Defendants' Memorandum of Law in Support of Motion to Dismiss

Dated: March 27, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW WARDEN
Assistant Director
Federal Programs Branch

*/s/ Samuel S. Holt*
SAMUEL S. HOLT
KATHLEEN C. JACOBS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 674-9761
Fax: (202) 616-8470
Samuel.Holt2@usdoj.gov

*Counsel for Defendants*

Defendants' Memorandum of Law in Support of Motion to Dismiss

## <u>Certificate of Compliance</u>

This brief complies with the page-limitation rule under LR 7-2(b), because it contains less than 35 pages, including headings, footnotes, and quotations, but excluding caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.

Defendants' Memorandum of Law in Support of Motion to Dismiss